

**FILED**

APR - 5 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| WALTER BARNARD GORDON aka GORDON J. GIL fdba W AND G AUTO and GWENDOLYN ELAINE GORDON aka GWENDOLYN JONES,<br><br>Debtors,<br><br>PREM N. DHAWAN,<br><br>Trustee. | Bk. No.: 08-22451<br><br>Adv. No. 08-02499<br><br>Chapter 7<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL** |
| PATELCO CREDIT UNION,<br><br>Plaintiff.<br><br>vs.<br><br>WALTER BARNARD GORDON aka GORDON J. GIL fdba W AND G AUTO and GWENDOLYN ELAINE GORDON aka GWENDOLYN JONES ,<br><br>Defendant. | **Date:** March 29, 2010<br>**Time:** 9:30 a.m.<br>**Dept:** D (Courtroom 34) |

After trial of this matter, the court makes the following findings of fact and conclusions of law:

| FACTS | EVIDENCE |
|---|---|
| **FACT 1:** That WALTER GORDON ("Walter") did business as W and G AUTO ("Dealership") at all relevant times. | Declaration of Ester Carino, Page 2, Par. 6 |
| **FACT 2:** That Walter and GWENDOLYN GORDON ("Gwendolyn") agreed to have Dealership act as a putative seller for the sale of a 2001 Mercedes-Benz CL 500 ("Vehicle | Declaration of Ester Carino, Page 2, Par. 6 |

1

| | | |
|---|---|---|
| 1 | 1") | |
| 2 | **FACT 3:** That on March 7, 2005, Gwendolyn applied for a loan from PATELCO CREDIT UNION ("Plaintiff") for the purchase of Vehicle #1 from Dealership. | Declaration of Ester Carino, Page 2, Par. 7<br><br>See also Motion in Limine, Page 3, line 13, 14. |
| 5 | **FACT 4:** That Dealership and Gwendolyn represented to Plaintiff that, in consideration for the loan, Plaintiff would obtain a security interest in Vehicle #1 as evidenced by a first position lien on the Certificate of Title to Vehicle #1. | Declaration of Ester Carino, Page 2, Par. 8.<br><br>See Also Motion in Limine, Page 3, Line 18, 19 |
| 9 | **FACT 5:** That on March 7, 2005, Plaintiff issued a check in the amount of $60,000 ("Check #1") to Dealership and Gwendolyn in accordance with the loan application and Gwendolyn represented that she would use the proceeds from Check #1 to purchase Vehicle #1 and Plaintiff would be placed in a first position lien on the Certificate of Title. | Declaration of Ester Carino, Page 3, Par. 9.<br><br>See Also Motion in Limine, Page 3, Lines 13-14, |
| 15 | **FACT 6:** Gwendolyn and Dealership endorsed Check #1 without perfecting Plaintiff's lien on Vehicle #1 and without transferring legal title to Vehicle #1. This is in direct violation of the stated conditions on the check. | Declaration of Ester Carino, Page 3, Par. 10.<br><br>See Also Motion in Limine, Page 3, Lines 15-17 |
| 19 | **FACT 7:** That neither Dealership nor Gwendolyn placed Plaintiff on title to the Vehicle although they were aware that they had to and instead transferred Vehicle #1 to a third party without satisfying Plaintiff's loan obligation. Neither Dealership not Gwendolyn informed Plaintiff of their intent to transfer title to a third party. | Declaration of Ester Carino, Page 3, Par. 11.<br><br>See Also Motion in Limine, Page 3, Lines 13-14, 15-17, 20-21, 25-67 |

| | |
|---|---|
| **FACT 8:** On December 9, 2005 Lasana McNealey ("McNealey") applied for a loan with Plaintiff with the assistance of Dealership and Walter. McNealey represented that he wanted to purchase a 2003 Landrover Rangerover ("Vehicle #2") from Dealership. | Declaration of Ester Carino, Page 4, Par. 14.<br><br>See Also: Declaration of Lasana McNealey, Page 2, Par. 6.<br><br>See Also Motion in Limine, Page 4, Lines 2-4 |
| **FACT 9:** That at all times the loan from Plaintiff to McNealey, Plaintiff was to be secured by Vehicle #2 and McNealey and Dealership represented that Plaintiff would obtain a security interest in Vehicle #2 in consideration for the loan. | Declaration of Ester Carino, Page 2, Par. 7.<br><br>See also Declaration of Lasana McNealey, Page 2, Par 7.<br><br>See Also Motion in Limine, Page 4 Lines, 2-4, 5-8, 9-11, |
| **FACT 10:** That on December 10, 2005 Plaintiff issued a check in the amount of $70,489.54 ("Check #2") to McNealey and Dealership. McNealey and Dealership represented that they would use the proceeds from Check #2 to purchase Vehicle #2 and that Plaintiff would be placed in a first position lien on the Certificate of Title to Vehicle #2. | Declaration of Ester Carino, Page 4, Par. 16.<br><br>See also Declaration of Lasana McNealey, Page 4, Par. 7.<br><br>See Also Motion in Limine, Page 4, Lines 2-4, 5-8, 9-11, 12-13, |
| **FACT 11:** That on December 12, 2005 Walter, acting as Dealership forged McNealey's name when he endorsed Check #2. Dealership negotiated Check #2 without placing Plaintiff on Certificate of Title to the Vehicle and without transferring legal title to Vehicle #2 to Plaintiff which was in direct violation of the stated conditions of Check #2. | Declaration of Ester Carino, Page 5, Par. 17.<br><br>See Declaration of Lasana McNealey, Page 2, Par. 7, 8.<br><br>See Also Motion in Limine, Page 4, Lines 12-13, 14-16 |
| **FACT 12:** That Dealership and McNealey were at all times aware that they were supposed to place Plaintiff on Certificate of Title to Vehicle #2. | Declaration of Ester Carino, Page 5, Par. 17.<br><br>See Also: Declaration of Lasana McNealey, Page 2, Par. 11, 12, 13.<br><br>See Also Motion in Limine, Page 4, Lines 5-8, 9-11 |
| **FACT 13:** That McNealey returned Vehicle | Declaration of Ester Carino, Page 5 and |

3

| | |
|---|---|
| #2 to Dealership due to the fact that Dealership never took the appropriate steps to place Plaintiff on Certificate of Title to Vehicle #2. | 6, Par.<br><br>See Also: Declaration of Lasana McNealey, Page 2, par. 10, 11, 12, 13. |
| **FACT 14**: That after McNealey returned Vehicle #2 to Dealership, Dealership made a few payments on the Vehicle and then sold Vehicle #2 to a third party and placed that third party on Certificate of Title to the Vehicle without satisfying Plaintiff's | Declaration of Lasana McNealey, Page 2, Par. 10.<br><br>See Also Motion in Limine, Page 4, Lines 14-16, 17-18 |
| **FACT 15:** That Certificate of Title to Vehicle #2 was transferred from Dealership to Walter before Check #2 was negotiated and Dealership failed to disclose this to Plaintiff in order to induce it to enter into the loan. | Declaration of Ester Carino, Page 5 and 6, Par. 19 and 20.<br><br>See Also Motion in Limine, Page 4, Lines 2-4, 5-8, 9-11, 12-13, 21-23 |

| | |
|---|---|
| **FACT 16:** That Defendants have no defenses to Plaintiff's complaint. | See Motion in Limine, Page 4, Line 24. |
| | |
| | |

Based on the foregoing facts, Plaintiff offers the followings conclusions of law on the First Cause of Action:

1. The debt owed to Plaintiff by Defendants due to the illegal actions of inducing Plaintiff to issue Check #1 is deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(2).
2. Defendants acting fraudulently in inducing PLainitff to issue Check #1.
3. Defendants did not intend to place PLainitff on Certificate of Title to Vehicle #1.
4. The representations made by Gwendolyn, Walter and Dealership that Plaintiff would obtain a 1st position lien on Vehicle #1 were material.

4

5. The representations made by Gwendolyn and Dealership were false. Gwendolyn and Dealership's actions were intentional and designed to defraud Plaintiff and to obtain Check #1 under false pretenses, and pursuant to false representations and/or actual fraud.

6. When Gwendolyn and Dealership made the representations they knew them to be false and made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff to issue Check #1.

7. Plaintiff was unaware that Gwendolyn and Dealership intended to obtain Check #1 under these circumstances and relied on the representations of Gwendolyn and Dealership that they would act in accordance with their representations to grant Plaintiff the security interest in Vehicle #1, and in accordance with the restrictive endorsements on Check #1 requiring that Check #1 only be negotiated if Plaintiff received the requisite security interest in Vehicle #1.

8. As a proximate result of the fraudulent conduct of Gwendolyn and Dealership, Plaintiff has not been repaid $31,596.69 plus interest and Plaintiff has not received a perfected security interest in Vehicle #1. Due to the filing of Debtors' bankruptcy, Plaintiff will be an unsecured creditor, with a discharged debt if its debt is not deemed non-dischargeable

Based on the foregoing facts, Plaintiff offers the followings conclusions of law on the Second Cause of Action:

1. The debt owed to Plaintiff by Defendants due to the illegal actions of inducing Plaintiff to issue Check #1 is deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(6) due to the Defendants willful and malicious harm done to Plaintiff.

2. Plaintiff's delivery of Check #1 to Gwendolyn and Dealership was conditioned upon Gwendolyn and Dealership taking all required steps to place Plaintiff in a first lien position on Vehicle #1 as evidenced by a Certificate of Title with the Plaintiff in a first lien position, issued by the California DMV.

3. Gwendolyn and Dealership misappropriated Check #1 for other purposes in violation of their obligations to Plaintiff. Such actions were willful and malicious actions in that they were designed to unlawfully appropriate Check #1 without placing Plaintiff on Certificate of Title of Vehicle #1 and in that Gwendolyn, Walter and Dealership had no intent to pay and resulted in damage to Plaintiff.

4. Gwendolyn and Dealership have defaulted on their loan with Plaintiff, Plaintiff does not have security for the loans and Gwendolyn and Dealership are seeking to discharge the debt owing to Plaintiff. Plaintiff has not been repaid $31,596.69 plus interest and Plaintiff has not received a perfected security interest in Vehicle #1. Due to the filing of Debtors' bankruptcy, Plaintiff will be an unsecured creditor, with a discharged debt if its debt is not deemed non-dischargeable.

Based on the foregoing facts, Plaintiff offers the followings conclusions of law on the Third Cause of Action:

1. For a determination that the debt owed to Plaintiff by Debtor are deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(2).

2. McNealey and Walter via Dealership agreed that Plaintiff, as financing lender, would be given a security interest in Vehicle #2, as evidenced by a first position lien on the certificate of title on Vehicle #2 in exchange for the loan of money by Plaintiff to McNealey and Dealership to purchase Vehicle #2. Contrary to their representations, Walter via Dealership negotiated the check without taking steps necessary to place Plaintiff in a first lien position on the Certificate of Title on Vehicle #2. Instead, Vehicle #2 was put in Gordon's name and Plaintiff was never placed on title to the Vehicle.

3. The representations made by McNealey and Walter via Dealership were material.

4. The representations made by McNealey and Dealership were false. Dealership's actions were intentional and designed to defraud Plaintiff and to obtain Check #2 under false pretenses, and pursuant to false representations and/or actual fraud.

5. When McNealey and Dealership made the representations to obtain Check #2 they knew them to be false and made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff to issue Check #2.

6. Plaintiff was unaware that McNealey and Dealership intended to obtain Check #2 under these circumstances and relied on the representations of McNealey and Dealership that they would act in accordance with their representations to grant Plaintiff the security interest in Vehicle #2, and in accordance with the restrictive endorsements on Check #2 requiring that Check #2 only be negotiated if Plaintiff received the requisite security interest in Vehicle #2.

7. As a proximate result of the fraudulent conduct of McNealey and Dealership, Plaintiff has not been repaid $70,019.52 plus interest and Plaintiff has not received a perfected security interest in Vehicle #2.

Based on the foregoing facts, Plaintiff offers the followings conclusions of law on the Fourth Cause of Action:

1. The debt owed to Plaintiff by Defendants due to the illegal actions of inducing Plaintiff to issue Check #1 is deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(6) due to the Defendants willful and malicious harm done to Plaintiff.

2. Plaintiff's delivery of Check #2 to McNealey and Dealership was conditioned upon McNealey and Dealership taking all required steps to place Plaintiff in a first lien position on Vehicle #2 as evidenced by a Certificate of Title with the Plaintiff in a first lien position, issued by the California DMV. Instead, McNealey and Dealership misappropriated Check #2 for other purposes in violation of their obligations to Plaintiff. Such actions were willful and malicious actions and were undertaken by Dealership against Plaintiff and resulted in damage to Plaintiff.

3. McNealey and Dealership have defaulted on their loan with Plaintiff, Plaintiff does not have security for the loans and McNealey and Dealership are seeking to discharge the debt owing to Plaintiff. Plaintiff has not been repaid $70,019.52 plus interest and Plaintiff has not received a perfected security interest in Vehicle #2.

Date: April 5, 2010

/s/ Robert Bardwil
Robert S. Bardwil
United States Bankruptcy Judge

8

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

<u>Attorney for Plaintiff</u>

Reilly Wilkinson
Scheer Law Group
155 N Redwood Dr., #100
San Rafael, CA 94903

<u>Pro se Defendants</u>

Walter and Gwendolyn Gordon
4424 Birdseye Way
Elk Grove, CA 95758

DATE: April 5, 2010

_____
Andrea Lovgren